_____

### UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| MAXIMO F. WILHELM-MUNOZ, | ) | |
| | ) | No. 08 CV 0434 |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | Judge Charles P., Kocoras |
| | ) | |
| MILLARD REFRIGERATED SERVICES,INC., | ) | |
| | ) | |
| **Defendant.** | ) | |

_____

### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
### TO DEFENDANT'S   MOTION TO DISMISS
### INTRODUCTION

Defendant Millard Refrigerated Services, Inc., ("Millard" or "Defendant") has moved this Honorable Court to Dismiss Plaintiff's a one count complaint. Plaintiff has alleged National Origin Discrimination under Title VII of the Civil Rights Act of 1964, as amended.

### STATEMENT OF THE CASE

Defendant has argued that Plaintiff, 1) based upon res judicata bars the plaintiff from  bringing this case before the court; 2) Plaintiff failed to bring an action within 90 days from the date of the "Right to sue" letter and; 3) Plaintiff waived his right by Dismissing  an Administrative Appeal. Defendant has argued that Plaintiff is bound to the determination by an administrative order by the Chief legal Counsel Designee for the Illinois Department of Human Rights ("IDHR") on January 7th of 2008. Defendant has structured its defense and response totally over this ruling, except for the 90 day "right to sue" letter defense.

1

Plaintiff had filed an action with the Illinois Department of Human Rights on December 11, 2006 (See Exhibit A). Plaintiff alleging generally National Origin Discrimination. Thereafter, Defendant filed a Response. (See Exhibit B). Thereafter IDHR conducted an Investigation. Once the investigation by IDHR was completed, IDHR dismissed Plaintiff's Charge of Discrimination. (See Exhibit C) There was no hearing on evidence or presentment of witnesses. In the Notice of Dismissal (Exhibit C page 11). Plaintiff was informed of his right to file for review of this decision with the Chief Legal Counsel of IDHR, within 15 days. Plaintiffs choose to file an Appeal with the Chief legal Counsel on September 13, 2007 (See Exhibit D). IDHR issued a Notice of Timely request for Review. (See Exhibit E), Thereafter, the Chief Legal Counsel (not an Administrative Judge) issued an order affirming the IDHR decision to dismiss Plaintiff Complaint. (See Exhibit F)  Chief legal Counsel stated this was a final an appealable order for Administrative Review. An Administrative Complaint in the Appellate Court of the 2nd  District and thereafter was dismissed thereby terminating the Administrative Review by the Appellate Court in the 2nd District. (See Exhibit G) Thereafter, Plaintiff was sent a Right to Sue letter from the Equal Employment Opportunity Commission (EEOC) on April 7, 2007 (See Exhibit H) and as alleged in the complaint before this court, Plaintiff received said document on or about April 19, 2008 (See Compl. ¶ 8).

## MOTION TO DISMISS

A motion to dismiss tests the sufficiency of a complaint, not the merits of a case. See Autry v. Northwest Premium Servs., Inc., 144 F.3d 1037, 1039 (7th Cir. 1998).  **[*3]** The Court must accept all well-pleaded factual allegations in the Complaint as true, drawing all reasonable inferences from those facts in Plaintiffs' favor. See Cleveland v. Rotman, 297 F.3d 569, 571 (7th Cir. 2002). Defendants' motions to dismiss should be granted only if Plaintiffs cannot prove any set of facts in support of their claims that would entitle them to relief. Autry, 144 F.3d at 1039

2

(quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)).

<u>ARGUMENT</u>

A.    <u>Dismissal Is Improper Because A Plaintiff Is Not Required</u>
<u>To Anticipate Affirmative Defenses</u>

The term *res judicata* is an affirmative defense, and Defendant bears the burden of proving that

its application is appropriate in this case. *Allahar v.Zahora, 59 F.3d 693, 696 (7th Cir. 1995),*

*Cazares v. Chi. Magnesium Casting Co.*, 2005 U.S. Dist. Lexis 22037 *3 (ILND No. 04 C 5976),

*Cassady v. The Quaker Oats,* 2002 U.S. Lexis 22227 *5, (ILND 2002 CV 4550)

A complaint need neither anticipate nor overcome affirmative defenses such as the statute of

limitations or *re judicata* at this stage of the pleadings. *See Gomez v. Toledo, 446 U.S. 635,* 640

(1980); *Xechem, Inc. v. Bristo1-Myers Squibb Co.,* 372 F.3d *899,* 901 (7th Cir. 2004)

("[P]laintiff's need not anticipate and attempt to plead around all potential defenses"). In light of

this pleading rule, the Seventh Circuit has held that it is "irregular" to dismiss a complaint as

untimely under Rule 12(b) (6). *United States. v. Northern Trust Co.,* 372 F.3d 886, 888 (7th Cir.

2004). Because a complaint does not fail to state a claim simply because some defense is

potentially available, the proper question a court must ask is "whether it is possible to imagine

proof of the critical facts consistent with the allegations actually in the complaint." *United States*

*Gypsum Co. v. Indiana Gas Co., Inc.,* 350 F.3d 623,626-629(7th Cir. 2003); *see also Leavell* V.

*Kieffer,* I 89 F.3d *492,495* (7th Cir. 1999).

The Defendant's basic and only attack relies on the IDHR ruling and all of the issues raised

therein. This argument is unsustainable. As stated above, *res judicata* or *statute of limitations* is

an affirmative defense and is "rarely a good reason to dismiss under Rule 12(b)(6)." *See Moore*

*v. Morales,* 415 F. Supp. 2d 891, 894 (N.D. Ill. 2006) (quoting *Reiser* v. *Residential Funding*

*Corp.* 380 F.3d 1027, 1030 (7th Cir. 2004)). As the case law unequivocally demonstrates, Plaintiff is simply not required to anticipate any potential affirmative defenses available to Defendant. *See Gomez,* 446 U.S. at 640. *See also Evans v. City of Chicago,* 2005 U.S. Dist. Lexis 1 8507 at *15 (N.D. Ill. Aug. 29, 2005) ("the statute of limitations is an affirmative defense that a plaintiff need not anticipate or attempt to address in a complaint"). While it is possible for a plaintiff to plead himself out of court by *admitting* all of the ingredients of an "impenetrable defense," *Xechem,* 372 F.3d at 901, Plaintiff has not admitted to anything resembling such an "impenetrable defense," and the Defendant does not contend that he has.

Next, for *res judicata* to apply, there are three requirements that must be meet: "(1) there was a final judgment on the merits rendered by a court of competent jurisdiction; (2) there is an identity of cause of action; and (3) there is an identity of parties or their privies." *D&K Properties Crystal Lake, v. Mutual Life Insurance Company of New York*, 112 F.3d 257; (7th Circ. 1996) *Devan Richardson, v. LaSalle Bank*, 2008 U.S. Dist. Lexis 1906.

As stated above, the Chief Counsel for the IDHR adjudicated the matter only on the written record. There was no hearing on evidence or presentment of witnesses nor would the Chief Counsel qualify as a court of competent jurisdiction.

**B.    Plaintiff's Complaint was brought within Ninety Days of an EEOC right to Sue Letter being received**

Here again, Defendant brings forth an affirmative defense of timeliness for filing of a Complaint based upon the "Right to Sue" letter by the EEOC. As indicated on the EEOC "Right to Sue," the time for a complaint runs from of receipt not the date of the notice as Defendant attempts to argue.

"The Seventh Circuit has interpreted the statutory limitations period contained in 42 U.S.C. § 2005e-5(f)(1) as commencing "on the date on which a claimant actually receives from the EEOC his notice of right to sue**."** *Archie v. Chicago Truck Drivers, Helpers and Warehouse Workers Union*, 585 F.2d 210, 216 (7th Cir. 1978). In taking this position, the court rejected the argument that the language of Title VII contemplated a constructive receipt doctrine for purposes of the limitations period and that "'condition[ing] a claimant's right to **sue** under Title VII on fortuitous circumstances'" would contravene the remedial purposes of the statute. *Id.* (quoting *Franks v. Bowman Transport'n Co.*, 495 F.2d 398, **[\*5]** 404 (5th Cir.1974), *rev'd on other grounds*, 424 U.S. 747, 47 L. Ed. 2d 444, 96 S. Ct. 1251 (1976))". **(See Baines v. Chicago Bd. of Educ., 1995 U.S. App. LEXIS 40768)**

## 1.  Although Not Reguired To Do So, Plaintiff Can Establish That He Is Entitled to Equitable Tolling

Despite the fact that he is not required to do so at this point in the proceedings, Plaintiff can show that he is entitled to equitable tolling. For equitable tolling to apply, a plaintiff must show "excusable ignorance of or noncompliance with the limitations period, evidently with no prejudice to defendant." *Payne v. Cook County Hospital,* 719 F. Supp. 730, 731 (N.D. ill. 1989) (citing *Baldwin Cty. Welcome Center v. Brown,* 466 U.S. 147 (1984)). "Excusable ignorance" includes situations in which a plaintiff was unaware of the relevant federal rules governing the filing of a lawsuit, *see Payne,* 719 F. Supp. at 731, and where there is a "substantial indication that [plaintiff] wished to seriously pursue" the claim. *See Ortiz v. Clarence H. Hackett, Inc.* , 581 F. Supp. 1258, 1261 (N.D. Ind. 1984) (citing *Archie v. Chicago Truck Drivers, 585* F.2d 210,217(7th Cir. 1978)). *See also Etheridge v. United States Army,* 2002 U.S. Dist. LEXIS 18842 at *8 (N.D. III. Oct. 4, 2002) ("Equitable tolling is to be measured by the expected conduct of a reasonable person in the plaintiff's situation"). The other relevant factors for purposes of equitable tolling are (i) the time that has elapsed after the statute of limitations has allegedly expired, *see Ortiz,* 581 F. Supp. at 1261 (allowing action to proceed where 119 days had passed), and (ii) the absence of prejudice to the defendant in allowing the suit to proceed. *See Ortiz,* 581 F. Supp. at 1261-62; *Payne,* 719 F. Supp. at 732.

In *Payne,* the plaintiff attempted to comply with administrative and federal law by timely filing her *pro se* complaint after receiving her right-to-sue letter from the EEOC. However, given the plaintiff's lack of knowledge, she filed her lawsuit in California rather than in Illinois. *See Id.* at 732. The court assessed the plaintiff's conduct and concluded that (i) "[plaintiff] acted responsibly, given her limited knowledge of the federal rules," (ii) her inadvertent mistake did not cause "extended delay," and (iii) the defendant could not show a claim of prejudice. *Id.*

## C.    Munoz has not Waived his Right to File a Complaint Under Title VII by Dismissing his Administrative Right Appeal.

Defendant reaches an even further stretch of the law in attempting to imply that by Plaintiff dismissing his Appeal of an Administrative Decision amounts to a waiver of Plaintiff's Rights to file an action in Federal Court. The Defendant's own case relies on the execution of a release of claims. In the cited case, it was the Plaintiff's written execution of a settlement in State Court that barred bringing of a future action in Federal Court. Since an Appeal is an Illinois case, a release has been construed as a contract of the parties and only covers the scope of the release. The dismissal of an Administrative appeal cannot be construed as a release of claims only the process of the appeal itself.

"A court's principal goal in construing a contract is to ascertain and give effect to the parties' intent at the time they entered into the contract. Meyer v. Marilyn Miglin, Inc., 273 Ill. App. 3d 882, 888, 652 N.E.2d 1233, 210 Ill. Dec. 257 (1995). The scope and effect of a release are controlled by the intention of the parties. Martin v. Illinois Farmers Insurance, 318 Ill. App. 3d 751, 761, 742 N.E.2d 848, 252 Ill. Dec. 310 (2000). This intent is determined from the language used and the circumstances of the transaction. Martin, 318 Ill. App. 3d at 762. A release cannot be construed to include claims not within the contemplation of the parties. Martin, 318 Ill. App. 3d at 762. Where there are only words of a general release, the release will be restricted to the thing or things intended to be released and we will not interpret generalities so as to defeat a valid claim not then in the minds of the parties. Martin, 318 Ill. App. 3d at 762." (**See Smith v. State Farm Ins. Cos., 369 Ill. App. 3d 478, 483 1st Dist. 2nd Div 2006**)

The court has not received any knowing release executed by the Plaintiff to benefit the Defendant in this matter nor in the IDHR case.

## <u>CONCLUSION</u>

The res judicata defense, the timeliness defense and the waiver defense, all constitute affirmative defenses that Plaintiff was not required to anticipate or address in his complaint. Based on these facts, Plaintiff, respectfully requests that this Court deny Defendant's Motion to Dismiss his Complaint.

**MAXIMO F. WILHELM-MUNOZ**

**By: <u>Michael T. Smith</u>**

**Michael T. Smith**

Michael T. Smith
440 W. Irving park Road
Roselle, Illinois 60172
847-895-0626

# EXHIBIT A

| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974: See Privacy act statement<br>before completing this form.<br>**(07W1127-14)** | AGENCY<br>☒ IDHR<br><br>☐ EEOC | CHARGE NUMBER<br><br>**2007CF1595** |
|---|---|---|

### Illinois Department of Human Rights and EEOC

| NAME (indicate Mr. Ms. Mrs.)<br>**Mr. Maximo F. Wilhelm-Munoz** | HOME TELEPHONE (include area code)<br>**(630) 674-6395** |
|---|---|

| STREET ADDRESS<br>**21W580 Lynn Road; #3** | CITY, STATE AND ZIP CODE<br>**Lombard, IL. 60148** | DATE OF BIRTH<br>**04/01/77** |
|---|---|---|

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (IF MORE THAN ONE LIST BELOW)

| NAME<br>**Millard Refrigerated Services** | NUMBER OF EMPLOYEES,<br>MEMBERS 15+ | TELEPHONE<br>**(630) 262-7410** |
|---|---|---|

| STREET ADDRESS<br>**2088 Geneva Drive** | CITY, STATE AND ZIP CODE<br>**Geneva, IL. 60134** | COUNTY<br>**DuPage (043)** |
|---|---|---|

| CAUSE OF DISCRIMINATION BASED ON:<br><br>**National Origin** | DATE OF DISCRIMINATION<br><br>EARLIEST (ADEA/EPA) LATEST (ALL)<br>**11/25/06**<br>☐ CONTINUING ACTION |
|---|---|

THE PARTICULARS ARE (if additional space is needed attach extra sheets)

I.    A.    **ISSUE/BASIS**

            **WRITTEN DISCIPLINARY WARNING, ON OR ABOUT OCTOBER 3, 2006, BECAUSE OF MY NATIONAL ORIGIN, GUATAMALA.**

    B.    **PRIMA FACIE ALLEGATIONS**

            1.  **My national origin is Guatamala.**

            2.  **I have satisfactorily performed my duties as a Fork Lift Operator, and have been employed with Respondent since May 17, 2005.**

**(Continued)**

I also want this charge filed with the EEOC. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

SUBSCRIBED AND SWORN TO BEFORE ME ON THIS

NOTARY SIGNATURE        MONTH DATE-YEAR    12/11/06

"OFFICIAL SEAL"<br>JACQUELYN TURNER HAMB<br>Notary Public, State of Illinois<br>My Commission Expires 9/21/09

**NOTARY SEAL**

X                    12/11/2006.<br>SIGNATURE OF COMPLAINANT    DATE

I declare under penalty that the foregoing is true and correct I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief

FORM 5 (5/05)

Exhibit 'A'01

Charge Number: 2007CF1595
Maximo F. Wilhelm-Munoz
Page 2

3. On or about October 3, 2006, I received a written disciplinary warning
from Mike Polerecky (non-Guatamala), Respondent's Plant Manager.
Polerecky stated that I was being issued the written disciplinary
warning because I acquired five or more excused absences within a
one year period. I did not receive any documentation from Polerecky
which validated his reason for the disciplinary action. During this
period of time, I did not engage in any acts of willful misconduct which
merited receipt of any disciplinary activity from the Respondent.

4. I believe that there have been other, similarly situated, non-Guatamala
forklift operators, that have levels of seniority and work performance
which is similar to mine, that have acquired five or more absences
within a one year period, but they were not disciplined by the
Respondent as I was.

II.  A.  ISSUE/BASIS

SUSPENSION, ON OR ABOUT OCTOBER 15, 2006, BECAUSE OF MY
NATIONAL ORIGIN, GUATAMALA.

B.  PRIMA FACIE ALLEGATIONS

1. My national origin is Guatamala.

2. I have satisfactorily performed my duties as a Forklift Operator, and have
been employed with Respondent since May 17, 2005.

3. On or about October 15, 2006, I was suspended by Mike Polerecky (non-
Guatamala), Respondent's Plant Manager. Polerecky stated that I was being
suspended because I missed two or more days of being tardy to work.
No documentation was received from Polerecky which validated his
reason for the suspension. During this time, I did not engage in
any acts of willful misconduct which merited the issuance of any suspension
action.

4. I believe that there have been other, similarly situated, non-Guatamala
forklift operators, that have levels of seniority and work performance which
is similar to mine, that have been accused of, or have actually engaged in
two or more days of being tardy to work, but they were not
suspended for their actions as I have been.

(Continued)

Charge Number:  2007CF1595
Maximo F. Wilhelm-Munoz
Page 3


III.    A.    ISSUE/BASIS

CONSTRUCTIVE DISCHARGE, ON OR ABOUT OCTOBER 26, 2006,
BECAUSE OF MY NATIONAL ORIGIN, GUATAMALA.

B.    PRIMA FACIE ALLEGATIONS

1.    My national origin is Guatamala.

2.    I have satisfactorily performed my duties as a Forklift Operator, and have
been employed with Respondent since May 17, 2005.

3.    On or about October 26, 2006, I constructively discharged myself when
I submitted written documentation to Carlos Mamarian (non-Guatamala),
Respondent's Assistant to the General Manager.  I submitted written
documentation to Mamarian stating that I was constructively discharging
myself because I was not given the opportunity to use my vacation leave,
and because I had been exposed to hazardous conditions within
Respondent's workplace.

ACF/JJT/RCG

# EXHIBIT B

# STATE OF ILLINOIS

# DEPARTMENT OF HUMAN RIGHTS

IN THE MATTER OF:      )
      )
MAXIMO F. WILHELM-MUNOZ,      )
      )
COMPLAINANT,      )    **CHARGE NO.: 2007-CF-1595**
      )
AND      )    **EEOC NO.: 21BA70571**
      )
MILLARD REFRIGERATED      )
SERVICES, INC.      )
      )
RESPONDENT.      )

## VERIFIED RESPONSE OF RESPONDENT

COMES NOW the Respondent, Millard Refrigerated Services, Inc. and responds to the Charge of Discrimination filed against it by the Complainant, Maximo F. Wilhelm-Munoz (the "Charge"), and states as follows:

I.    A.    ISSUE/BASIS.

    1.    Respondent denies that it or any of its employees, servants or agents issued a written disciplinary warning to Complainant on or about October 3, 2006 or at any other time during Complainant's employment with Respondent because of his national origin, namely: "Guatemala". Further pleading, and as an affirmative defense, Respondent states that neither Respondent nor its employees knew that Complainant's national origin was "Guatamala" nor does it make any distinctions for Guatamalan. Further pleading and as an affirmative defense, Respondent states that Complainant was disciplined on October 3, 2006 for legitimate business reasons of Respondent and in accordance with Respondent's valid and existing policies. Further pleading, paragraph I A 1 of the Charge fails to state a violation of any applicable law.

    B.    PRIMA FACIE ALLEGATIONS.

    1.    Respondent is without sufficient information to form a belief with respect to the allegation that Complainant's national origin, "Guatamala".

    2.    Respondent admits that Complainant satisfactorily performed his duties as a Fork Lift Operator, but denies that Complainant has been employed with Respondent since May 17, 2005. Further pleading, Respondent alleges that Complainant was employed by Millard on July 16, 2003 and re-hired on May 25, 2005.

3.     Respondent admits that on October 3, 2006, Complainant received a written warning from Supervisor Mike Polerecky for his fifth excused absence in accordance with Respondent's written attendance policy. Further pleading and as an affirmative defense, Respondent states that in accordance with its attendance policy, Complainant should have received the written warning on his fourth excused absence but that prior step was missed; thereby resulting in a written warning to Complainant on his fifth offense. Respondent further denies that Complainant did not receive any documentation from Polerecky which validated his reason for the disciplinary action. Complainant did in fact receive a written Employee Corrective Action, which Complainant signed. Further, the written Employee Corrective Action clearly stated the dates of all previous excused absences. Respondent further denies that Mike Polerecky is Respondent's Plant Manager. Respondent further denies that Complainant did not engage in any willful acts of misconduct which merited receipt of any disciplinary activity from Respondent. Further pleading and as an affirmative defense, Respondent states that Complainant received such discipline because he violated Respondent's valid and existing attendance policy, as set forth above.

4.     Respondent denies Complainant's allegations in paragraph I B 4.

II.    A.     ISSUE/BASIS

1.     Respondent denies that it or any of its employees, servants or agents suspended Complainant on October 15, 2006 or took any other adverse employment action against Complainant because of Complainant's national origin, namely: "Guatemala". Further pleading as an affirmative defense, Respondent states that it did not know that Complainant's national origin was Guatemala. Further pleading, and as an affirmative defense, Respondent states that Complainant was suspended on October 15, 2006 for legitimate business reasons of Respondent, including the fact that Complainant violated the valid and existing attendance policies of the Respondent. Further pleading, paragraph II A 1 of the Charge fails to state a violation of any applicable law.

B.    PRIMA FACE ALLEGATIONS

1.     Respondent lacks sufficient knowledge to either admit or deny Complainant's allegation in paragraph II.B.1. that his national origin is Guatemala. Further pleading and as an affirmative defense, Respondent submits that at no time during Complainant's employment with Respondent did Respondent know that Complainant's national origin was "Guatamala".

2.     Respondent denies Complainant's allegations in paragraph II B 2.

3.   Respondent admits that Complainant was suspended from work on October 15, 2006, by Mr. Mike Polerecky.  Respondent denies that Mike Polerecky is the Respondent's Plant Manager and further pleading, does not have sufficient knowledge to either admit or deny Complainant's allegation that Mr. Polerecky's national origin is "Non-Guatamala".  Respondent further denies that Complainant did not receive any documentation from Mr. Polerecky which validated his reason for the disciplinary action and denies that Complainant did not engage in any acts of willful misconduct during his employment that merited receipt of any disciplinary activity from Respondent.  Further pleading and as an affirmative defense, Respondent states that Complainant was issued a suspension on October 15, 2006 in accordance with Respondent's valid and existing attendance policy.  According to that policy, Complainant should have been suspended on his second unexcused absence which occurred on October 5, 2006, but since the prior suspension step was missed, Complainant was suspended on his third unexcused absence, which occurred due to accumulated tardies, which constituted one unexcused absence. Pursuant thereto, Complainant received a written Employee Corrective Action which Complainant signed, stating that he understood the comments thereon.

4.   Respondent denies Complainant's allegations in paragraph II B 4.

III.   A.   ISSUE/BASIS

1.   Respondent denies that on October 26, 2006, or any other time, it or any of its employees, servants or agents discharged either constructively or actually, Complainant because of his national origin, namely, Guatemala.  Further pleading and as an affirmative defense, Respondent states that Complainant voluntarily resigned from him employment with Respondent.  Further pleading, paragraph III A 1 fails to state a violation of any applicable State of Illinois or federal law.

B.   PRIMA FACIE ALLEGATIONS

1.   Respondent lacks sufficient knowledge to either admit or deny Complainant's allegation in paragraph III B 1, that his national origin is Guatemalan.  Further, and as an affirmative defense, Respondent submits that at no time during Complainant's employment with Respondent did Respondent know what that Complainant's national origin was "Guatamalan".

2.   Respondent denies Complainant's allegations in paragraph III B 2.

3.   Respondent denies Complainant's allegations in paragraph III B 3.  Further pleading and as an affirmative defense, Respondent states that Complainant voluntarily resigned his employment with Respondent.

IV.    For the reasons set forth above, Respondent prays that the Charge be dismissed with predjudice.

Respectfully submitted,

MILLARD REFRIGERATED SERVICES, INC.,
Respondent

By: _____
Steven L. Offner
General Counsel & Secretary

## VERIFICATION

STATE OF NEBRASKA        )
                                            )ss.
COUNTY OF DOUGLAS      )

Steven L. Offner being first duly sworn, deposes and says that he is the General Counsel and Secretary of Millard Refrigerated Services, Inc., the Respondent herein; that he has read the foregoing verified response to the Charge of discrimination; that he knows the contents thereof; and that said response is true and correct to the best of his knowledge, information and belief.

_____
Steven L. Offner

SUBSCRIBED and SWORN to before me this 12th day of March, 2007.

GENERAL NOTARY - State of Nebraska
TRISHA K. McCORMICK
My Comm. Exp. May 12, 2009

_____
Notary Public

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing Verified Response to Charge of discrimination was served upon Respondent, Maximo F. Wilhelm-Munoz, 21 W. 580 Lynn Road, #3, Lombard, IL 60148 by depositing same in the U.S. Mail, postage prepaid, on the _12th_ day of _March_, 2007.

Steven L. Offner

F:\Home\SHELLIM\Docs07\Wilhelm-Munoz.VerifiedResponse.0306.doc

# EXHIBIT C

STATE OF ILLINOIS
DEPARTMENT OF HUMAN RIGHTS

IN THE MATTER OF:                          )
                                           )
MAXIMO F. WILHELM-MUNOZ,                   )          CHARGE NO.  2007CF1595
                                           )          EEOC NO.    21BA70571
                    COMPLAINANT,           )
                                           )
AND                                        )
                                           )
MILLARD REFRIGERATED SERVICES,             )
                                           )
                    RESPONDENT.            )


## NOTICE OF DISMISSAL
## FOR LACK OF SUBSTANTIAL EVIDENCE

Mr. Maximo F. Wilhelm-Munoz          Mr. Steven L. Offner, Esq.
459 Bristol Drive                    General Counsel
Carol Stream, IL  60188              Millard Refrigerated Services, Inc.
                                     4715 South 132nd Street
                                     Omaha,  NE  68137


DATE:  August 17, 2007

REQUEST FOR REVIEW FILING DEADLINE DATE:   September 21, 2007

1.      YOU ARE HEREBY NOTIFIED that based upon the enclosed investigation
report, the DEPARTMENT OF HUMAN RIGHTS (DHR) has determined that there is
NOT substantial evidence to support the allegations of the charge(s).  Accordingly,
pursuant to Section 7A-102(D) of the Human Rights Act (775 ILCS 5/1-101 et. seq.)
and its Rules and Regulations (56 Ill. Adm. Code. Chapter II, Section 2520.810), the
charge is HEREBY DISMISSED.

2.      If Complainant disagrees with this action, Complainant may seek review of this
dismissal before the CHIEF LEGAL COUNSEL (CLC), Illinois Department of Human
Rights, 100 West Randolph Street, Suite 10-100, Chicago, Illinois, 60601, by filing a
"Request for Review" with the CLC within thirty (30) days after receipt of this Notice, by
the request for review filing date above.  Respondent will be notified by the CLC if a
Request for Review is filed.


(continued on page two)


10

**NOTICE OF DISMISSAL FOR LACK OF SUBSTANTIAL EVIDENCE**
August 17, 2007
Page Two

3.      If an EEOC charge number is cited above, this charge was also filed with the Equal Employment Opportunity Commission (EEOC).  If this charge alleges a violation under Title VII of the Civil Rights Act of 1964, as amended, or the Age Discrimination in Employment Act of 1967, Complainant has the right to request EEOC to perform a Substantial Weight Review of this dismissal.  (Charges filed under the Americans with Disabilities Act of 1990 are automatically given this review.)  Please note that in order to receive such a review, it must be requested in writing to EEOC within fifteen (15) days of the receipt of this notice, or if a request for review is filed with the Chief Legal Counsel, within fifteen days of the Chief Legal Counsel's final order.  Any request filed prior to your receipt of a final notice WILL NOT BE HONORED.  Send your request for a Substantial Weight Review to EEOC, 500 West Madison Street, Suite 2800, Chicago, Illinois  60661.  Otherwise, EEOC will generally adopt the Department of Human Rights' action in this case.

PLEASE NOTE:  BUILDING SECURITY PROCEDURES PRESENTLY IN PLACE DO NOT PERMIT ACCESS TO EEOC WITHOUT AN APPOINTMENT.  IF AN APPPOINTMENT IS REQUIRED, CALL 312-353-2713 OR 1-800-669-4000.

DEPARTMENT OF HUMAN RIGHTS

NOD/LSE
12/01

11

# STATE OF ILLINOIS
## DEPARTMENT OF HUMAN RIGHTS
### INVESTIGATION REPORT

**Complainant:** Maximo F. Wilhelm-Munoz           **IDHR No:** 2007CF1595
**Respondent:** Millard Refrigerated Services      **EEOC:** 21BA70571

**Investigator: John Detwiler**   Supervisor: _____   Date: 08-16-07

**Issue/Basis:**   **A. Written disciplinary warning/**           Finding: A. Lack of substantial evidence
              **national origin, Guatemala**
           **B. Suspension/national origin,**                      B. Lack of substantial evidence
              **Guatemala**
           **C. Constructive discharge/**                          C. Lack of substantial evidence
              **national origin, Guatemala**

## Jurisdiction:

Alleged violations:
                                              A.  October 3, 2006
                                              B.  October 15, 2006
                                              C.  October 26, 2006
Charged filed:                                December 11, 2006
Charge Perfected:                             December 11, 2006
Amendments:                                   None
Number of employees:                          2,049

## Verified Response

Due:  April 6, 2007
Received: March 13, 2007 **(Exhibit A)**
Timely:__X__ Untimely: _____
If untimely, good cause shown: Yes: _____  No: _____

## Employment Data:

Respondent's EEO-1 Report **(Exhibit B)** indicates that they employ 2,049 individuals, 89 of whom are Forklift Drivers.  Respondent does not track the national origin of employees.

## Uncontested Facts:

1. Respondent is a cold storage/warehousing facility.
2. Complainant worked at Respondent from July 2003 until he resigned in March 2005.
3. Complainant was rehired on May 25, 2005, as a forklift driver.

Charge No.: 2007CF1595
Page 2 of 12

4. Respondent was aware of Complainant's national origin, Guatemala.
5. Complainant received a written warning on October 3, 2006, for attendance violations.
6. Complainant was suspended on October 15, 2006, for attendance violations.
7. On October 25, 2006, Complainant was involved in an accident with a forklift and was asked to take a drug test.
8. On October 26, 2006, Complainant refused to take a drug test.
9. On October 26, 2006, Complainant was suspended for refusing to take a drug test.
10. Complainant resigned his position on October 26, 2006 rather than take the drug test.

## Complainant's Allegations - Count A:

Complainant, a Forklift Driver, stated that he was given a written warning because of his national origin, Guatemala.

## Respondent's Defenses - Count A:

Respondent's articulated, non-discriminatory defense is that Complainant was issued a written warning on October 3, 2006, for having five excused absences within a 12-month period. Respondent stated that their progressive discipline policy indicates that a written warning should be issued after four excused absences and a one-day suspension should be given for the fifth excused absence. Respondent stated that other, non-Guatemalan employees have received written warnings for four excused absences.

Respondent contends that Complainant worked for Respondent from July 2003 until he resigned his position in March 2005. Respondent stated that they then rehired Complainant on May 25, 2006. Respondent contends that they were aware of Complainant's national origin, Guatemala, when they hired him in 2003 and were aware of Complainant's national origin, Guatemala, when they rehired him in 2005.

## Investigative Summary – Count A

### A. Complainant's Evidence.

1. Complainant stated that he had worked at Respondent from July 2003 until March 2005 and was rehired in May 2005 as a Forklift Driver. Complainant stated that Respondent was aware of his national origin, Guatemala, because he had needed to provide a work authorization when he was hired in 2003. Complainant stated that he did not believe that anyone else at Respondent had a national origin of Guatemala.

2. The investigation revealed the Job Description for Forklift Driver **(Exhibit C)**, which indicates that Complainant's responsibilities included driving gasoline, liquefied gas, or electric vehicles equipped with lifting forks.

3. The investigation revealed the employment file for Complainant **(Group Exhibit D)**, which indicates that Complainant was hired on July 16, 2003, **(Exhibit D-1)** and resigned his position to take another job on March 3, 2005, **(Exhibit D-2)**. The file

Charge No.: 2007CF1595
Page 3 of 12

further indicates that Complainant was rehired on May 25, 2005, as a forklift driver **(Exhibit D-3)**.

4. Complainant stated that on October 3, 2005, he was told by Mike Polerecki (non-Guatemala), Plant Manager, that he was receiving a written warning for having too many excuse absences. Complainant stated that he felt the warning was unjustified because anytime he was late or missed work he always called and let someone know.

5. The investigation revealed a written warning for Complainant, dated October 3, 2006 **(Exhibit E)**, which indicates that Complainant was written up for having 5 excused absences. The warning is signed by Complainant, who indicates on the form that he does not agree with the discipline.

6. Complainant stated he doesn't accept the written warning because Respondent knew that he was working a lot of hours and was being run down. Complainant stated that he had worked at Respondent from 2003 until early 2005 and had been given a handbook when he was hired in 2003 but was not given a handbook when Respondent rehired him in May 2005. Complainant stated that he was unaware of the policy for excused absences. Complainant stated that he had signed the warning but doesn't think he was given a copy.

B. **Respondent''s Evidence.**

1. The investigation revealed Respondent's EEO policy **(Exhibit F)**, which indicates that Respondent will comply with federal and state laws regarding equal opportunity in employment.

2. Mike Polerecki (non-Guatemala), Plant Manager, stated that Complainant had worked for Respondent in 2003 through 2005 and had resigned to take a job at another company. Polerecki stated that in May 2005, Complainant re-applied for a job as a forklift driver and was rehired. Polerecki stated that he did not know Complainant's country of origin. Polerecki stated that between the end of 2005 and October 2006, Complainant had received five excused absences and several unexcused absences. Polerecki stated that because of the excused absences, and in holding with Respondent's attendance policy, Complainant was issued a written warning on October 3, 2006.

3. The investigation revealed Respondent's attendance policy **(Exhibit G)**, which indicates that excessive excused absences will result in the following discipline:

- 3 excused absences: Counseling
- 4 excused absences: Written warning
- 5 excused absences: Final warning and 1 day suspension
- 7 excused absences: Termination.

Charge No.: 2007CF1595
Page 4 of 12

4. Sam Pillay (non-Guatemala), Human Resources Representative, stated that Respondent was aware of Complainant's national origin, Guatemala, when Complainant was first hired by Respondent in 2003.

5. Pillay denied that Complainant's written warning **(Exhibit E)** was because of his national origin but stated that the warning, issued in October 3, 2006, was because Complainant had five unexcused absences in a 12-month period.

6. The investigation revealed attendance records for Complainant for 2005 and 2006 **(Exhibit H)**, which indicate that he had excused absences on November 21, 2005, November 22, 2005, December 28, 2005, July 2, 2006, September 6, 2006, October 1, 2006, and October 2, 2006.

7. Pillay stated that other employees who are not from Guatemala have received written warnings for fewer excused absences that Complainant.

8. The investigation revealed four employees, besides Complainant, who received written warnings for an excessive amount of excused absences during the period January 1, 2006, and December 11, 2006 **(Group Exhibit I)**. Two (50%) of the employees were issued written warnings for having four excused absences, the other two for having 5 excused absences. Respondent does not believe any of the four employees to be of national origin, Guatemala.

9. Pillay stated that Complainant had been given an employee handbook both in 2003 and when he was hired in May 2005. Pillay stated that Complainant signed an acknowledgement both times **(Exhibit J)**.

C. **Complainant's Rebuttal**

1. Complainant reiterated that he took the excused absences because he was being worked too many hours by Respondent and was not allowed to take vacation. Complainant stated that Respondent would work him as many as 23 hours in a day and the pace of work caused him to become ill.

2. Complainant stated that another occasion for an excused absence was when he had car problems, which was a situation beyond his control.

**Analysis**

The Department's investigation did not reveal that Complainant received a written warning based on his national origin, Guatemala. Respondent's attendance policy indicates that an excessive number of excused absences will result in discipline. The policy indicates that four excused absences will results in a written warning and five excused absences will result in a final warning. Documented evidence indicates that Complainant had five excused absences in the twelve months prior to his receiving the written warning. Based on Respondent's attendance policy, Complainant could have been issued a final warning and a 1-day suspension but instead was only issued a written warning. Documented

15

Charge No.: 2007CF1595
Page 5 of 12

evidence indicates two employees, not of national origin Guatemala, received written warnings in the 12 months before Complainant's received his written warning for having four excused absences.

Complainant did not identify, and the investigation did not reveal, any employee of a non-Guatemalan national origin, who had five or more excused absences and did not receive a written warning.

It is an uncontested fact that Respondent knew Complainant's national origin when he was hired in July 2003. Complainant resigned his position in March 2005 and was rehired in May 2005. There is no evidence to indicate that Complainant's written warning was based on his national origin, Guatemala.

## Findings and Conclusion – Counts A:

A finding of **LACK OF SUBSTANTIAL EVIDENCE** is recommended because:

The evidence shows that Respondent issued Complainant a written warning for an excessive number of excused absences, which is consistent with Respondent's attendance policies. The investigation also revealed that Respondent issued four similarly situated employees, not of national origin Guatemala, written warnings under similar circumstances, including two who had fewer excused absences than Complainant. There is no evidence of an animus based on Complainant's national origin. There is no substantial evidence that Respondent discharged Complainant based on his national origin, Guatemala

## Complainant's Allegations – Count B:

Complainant, a Forklift Driver, stated that on October 15, 2006, he was suspended based on his national origin, Guatemala.

## Respondent's Defenses – Count B

Respondent's articulated, non-discriminatory defense is that Complainant was issued a one-day suspension for three unexcused absences within a 12-month period. Respondent stated that per their attendance policy, Complainant should have been suspended after two unexcused absences. Respondent stated that they have also issued suspensions to employees of non-national origin Guatemala for the same reason.

Respondent contends that Complainant worked for Respondent from July 2003 until he resigned his position in March 2005. Respondent stated that they then rehired Complainant on May 25, 2006. Respondent contends that they were aware of Complainant's national origin, Guatemala, when they hired him in 2003 and were aware of Complainant's national origin, Guatemala, when they rehired him in 2005.

Charge No.: 2007CF1595
Page 6 of 12

## INVESTIGATIVE SUMMARY – COUNT B

### A.  Complainant's Evidence

1. Complainant stated that in October 2006 he was sick from being overworked and was late a few times.  Complainant stated that he was suspended but several other employees were also late or missed days but were not suspended.  Complainant stated that these employees were Luis[1] (last name unknown), a forklift driver who was doing some work at his supervisor Pedro Reynoso's home, and Eugene Cobb.

2. The investigation revealed a Disciplinary Action Report dated October 15, 2006 (Exhibit K).  The Report indicates that Complainant was issued a 1-day suspension on October 16, 2006, for an unexcused absence on April 12, 2006, and October 5, 2006, and five instances of tardiness on February 10, 2006, March 14, 2006, August 8, 2006, September 25, 2006, and September 27, 2006.

### B.  Respondent's Evidence

1. Polerecki stated that two days after receiving the written warning warning, Complainant missed work without calling in.  Polerecki stated that this had also happened several times within the prior twelve months.

2. The investigation revealed a Disciplinary Action Report dated April 25, 2006 (Exhibit L), which indicates that Complainant was issued a written warning for an unexcused absence on April 12, 2006.  Complainant signed the form but stated that he disagreed with the action and stated that he missed work because of car trouble.

3. Polerecki stated that based on the unexcused absences, and as with the written warning, following Respondent's disciplinary policy, Complainant was issued a 1-day suspension.

4. The investigation revealed Respondent's attendance policy (Exhibit M), which indicates that unexcused absences will result in the following discipline:

   - 1 unexcused absence: Written warning
   - 2 unexcused absences:  Final warning and 1 day suspension
   - 3 unexcused absences:  Termination.

   The policy indicates that 4 instances of tardiness will equal 1 unexcused absence.

5. The investigation revealed five employees, besides Complainant, who received suspensions for an unexcused absences during the period January 1, 2006, and December 11, 2006 (Group Exhibit N).  All of whom were issued suspensions for

---

[1] Respondent indicated that were unable to determine the identity of this employee.

Charge No.: 2007CF1595
Page 7 of 12

having two unexcused absences. Respondent does not believe any of the four employees to be of national origin, Guatemala.

The employees receiving suspension include Eugene Cobb (non-Guatemala), who received a 1-day suspension on December 8, 2006, for having two unexcused absences **(Exhibit N-1)**.

6. Pedro Reynoso (non-Guatemala), Supervisor, stated that he was Complainant's direct Supervisor from May 2005 until early October 2006. Reynoso stated that he had no direct knowledge about Complainant's written warning, suspension, or resignation. Reynoso stated that he did not know any employee named Luis and denied ever having any employee from Respondent do any work on his house.

## C. **Complainant's Rebuttal**

1. Complainant stated that while he may have been late, his non-Guatemalan co-workers Luis (last name unknown) and Eugene Cobb also had unexcused absences but were not suspended.

## Analysis

The Department's investigation did not reveal that Complainant received a suspension based on his national origin, Guatemala. Respondent's attendance policy indicates that an excessive number of unexcused absences will result in discipline. The policy indicates that two unexcused absences will results in a final warning and a 1-day suspension and three unexcused absences will result in discharge. The policy also indicates that four instances of tardiness will equal one unexcused absence. Documented evidence indicates that Complainant had two unexcused absences and five instances of tardiness in the twelve months prior to his receiving the warning. Based on Respondent's attendance policy, Complainant could have been discharged but instead was only issued a 1-day suspension. Documented evidence indicates five employees, not of national origin Guatemala, who received 1-day suspensions in the 12 months before Complainant's received his written warning for having two unexcused absences.

Documentation also indicates that Complainant's stated comparative, Eugene Cobb, received a 1-day suspension for having two unexcused absences on December 8, 2006, three days before Complainant filed his charge of discrimination.

It is an uncontested fact that Respondent knew Complainant's national origin when he was hired in July 2003. Complainant resigned his position in March 2005 and was rehired in May 2005. There is no evidence to indicate that Complainant's written warning was based on his national origin, Guatemala.

## Findings and Conclusion:

A finding of **LACK OF SUBSTANTIAL EVIDENCE** is recommended because:

Charge No.: 2007CF1595
Page 8 of 12

The evidence shows that Respondent issued Complainant a 1-day suspension for an excessive number of unexcused absences, which is consistent with Respondent's attendance policies. The investigation also revealed that Respondent issued five similarly situated employees not of national origin Guatemala 1-day suspensions under similar circumstances, all of whom had two unexcused absences but did not have five instances of tardiness as did Complainant. There is no evidence of an animus based on Complainant's national origin. There is no substantial evidence that Respondent discharged Complainant based on his national origin, Guatemala

## Complainant's Allegations – Count C

Complainant, a Forklift Driver, stated that on October 26, 2006, he was constructively discharged based on his national origin, Guatemala.

## Respondent's Defenses – Count C

Respondent denied that Complainant was subject to constructive discharge based on his national origin, Guatemala. Rather, Respondent contends that Complainant was involved in a workplace accident with a forklift. Respondent's policy indicates that any employee involved in an accident in the workplace must submit to a drug/alcohol test. Respondent further contends that Complainant refused to take a drug/alcohol test and resigned his position.

Respondent contends that Complainant worked for Respondent from July 2003 until he resigned his position in March 2005. Respondent stated that they then rehired Complainant on May 25, 2006. Respondent contends that they were aware of Complainant's national origin, Guatemala, when they hired him in 2003 and were aware of Complainant's national origin, Guatemala, when they rehired him in 2005.

## INVESTIGATIVE SUMMARY – COUNT C

### A. Complainant's Evidence

1. Complainant stated that because he was overworked at Respondent, conditions were unsafe and he had an accident with his forklift on October 22, 2006. Complainant stated that since he had been recently suspended, he did not want to get in trouble so he didn't tell anyone about the accident. Complainant stated that later on that day, he was told by a supervisor, Jake Symmonds, that he would have to take a drug test. Complainant stated that he doesn't use drugs but was worried that he would be considered a criminal so he refused to take the test. Complainant stated that Symmonds told him he was going to be suspended. Complainant stated that because he was a good employee but was being treated like a criminal, he constructively discharged himself. Complainant stated that he is not aware of any other employee who has been involved in an accident but was not given a drug test.

2. The investigation revealed a letter of resignation from Complainant dated October 26, 2006, **(Exhibit R)**, which indicates that Complainant is resigning his position because he was asked to take a drug test and for receiving a written warning and suspension.

## B. Respondent's Evidence

1. Polerecki stated that October 22, 2006, Complainant had an accident with his forklift, resulting in an overhead light being broken. Polerecki stated that this type of accident requires that the person involved report to their supervisor immediately. Polerecki stated that Complainant did not report the accident until confronted by a Supervisor, Jacob Symmonds (non-Guatemala).

2. Polerecki stated that on October 23, 2006, Complainant was told by his Carlos Mamarian, Operations Manager, that he would need to take a drug test because of the accident.

3. The investigation revealed Respondent's accident policy **(Exhibit O)**, which indicates that all accidents must be reported to an immediate supervisor, regardless of the nature or severity of the accident. The policy further states that an employee involved in an accident must submit to a mandatory post accident drug/alcohol/inhalant test.

4. The investigation revealed documentation for 68 employees of Respondent who have taken a drug test because of an accident during the period of time October 1, 2004, through October 1, 2006 **(Exhibit Q)**. Respondent does not believe any of the employees to be of national origin, Guatemala.

5. Polerecki stated that Complainant refused and Mamarian called Respondent's Human Resources Coordinator, Sam Pillay (non-Guatemala) and asked what to do.

6. Sam Pillay stated that he told Mamarian to place Complainant on suspension pending an investigation into the accident. Pillay stated that when Mamarian told Complainant he was being suspended, he told Mamarian that he quit **(Exhibit R)**.

7. The investigation revealed five employees, besides Complainant, who resigned their positions during the period January 1, 2006, and December 11, 2006 **(Group Exhibit P)**. Respondent does not believe any of the four employees to be of national origin, Guatemala.

8. Jacob Symmonds (non-Guatemala), Supervisor, stated that on October 26, 2006, he was informed that there had been an accident in a freezer area where a forklift had struck an overhead light. Symmonds stated that Complainant was assigned to work in that area so he asked Complainant if he had damaged the light fixture. Symmonds stated that Complainant admitted to the accident and he told Complainant that it would be necessary to fill out an incident report and take a drug test. Symmonds stated that Respondent's policy was that any employee involved in an accident was required to take a drug test. Symmonds stated that he and Complainant went to an office to fill out the paperwork but left for a few minutes when he had to attend to some other business. Symmonds stated that he told Complainant to wait in the office and he would be back

Charge No.: 2007CF1595
Page 10 of 12

shortly. Symmonds stated that when he returned about five minutes later Complainant had left.

Symmonds stated that Complainant showed up for his scheduled shift that evening. Symmonds stated that when Complainant arrived, he brought him to meet with Carlos Mamarian, Operations Manager. Symmonds stated that Mamarian told Complainant that they still needed to complete the incident report and Complainant needed to take a drug test. Symmonds stated that Complainant told them that he would rather quit than take a drug test and wrote out a resignation letter. Symmonds stated that Complainant then gathered his belongings and left Respondent.

9. Carlos Mamarian (non-Guatemala), Operations Manager, stated that on October 26, 2006, he was informed by Jacob Symmonds that Complainant had been involved in an accident with a forklift. Mamarian stated that on the evening of October 26, 2006, he met with Symmonds and Complainant to discuss the incident. Mamarian stated that Symmonds had told him that Complainant had left his prior shift without completing an incident report or taking a drug test. Mamarian stated that he asked Complainant why he had left and was told by Complainant that he didn't feel like waiting around and could take care of the documentation on his next shift. Mamarian stated that he told Complainant that it would be necessary to take a drug test, to which Complainant refused and said that he would rather quit. Mamarian stated that he told Complainant that if he refused to take the test he could be discharged but Complainant again refused to take the test.

Mamarian stated that he asked Complainant to wait outside his office and then called Sam Pillay. Mamarian stated that he discussed the situation with Pillay, who told him to place Complainant on suspension pending investigation. Mamarian stated that he brought Complainant back into his office and told Complainant that he would be placed on suspension for refusing the drug test. Complainant stated that he would then resign his position. Mamarian stated that Complainant wrote out a resignation letter and then left with Jacob Symmonds to collect his things.

## C. **Complainant's Rebuttal**

1. Complainant stated that he did not use drugs and would not submit to the drug test because he felt Respondent was looking for a way to get him in trouble.

## **Analysis**

The Department's investigation did not reveal that Complainant was subject to constructive discharge based on his national origin, Guatemala. It is an uncontested fact that Complainant was involved in an accident and was asked by Respondent to submit to a drug test, which Complainant refused to take. Respondent's policy indicates that all employees involved in an accident must submit to a post accident drug test. Complainant's testimony, along with documented evidence, indicates that Complainant resigned his position rather than submit to a drug test. There is no evidence to indicate that Complainant was subject to a hostile working environment that would result in a constructive

discharge.   There is no substantial evidence to indicate that Respondent subject Complainant to a constructive discharge based on his national origin, Guatemala.

**Findings and Conclusion:**

A finding of **LACK OF SUBSTANTIAL EVIDENCE** is recommended because:

Complainant's testimony, along with documented evidence, indicates that Complainant resigned his position rather than submit to a drug test.  Respondent's policy indicates that all employees involved in an accident must submit to a post-accident drug test.   There is no evidence to indicate that Complainant was subject to a hostile working environment that would result in a constructive discharge.  There is no evidence of an animus based on Complainant's national origin.  There is no substantial evidence that Respondent discharged Complainant based on his national origin, Guatemala

**Witness Information**

1.  Complainant (FFC)
    459 Bristol Dr.
    Carol Stream, IL 60188
    630-674-6395

2.  Sam Pillay (non-Guatemala), Human Resources Coordinator (FFC)
    C/o: Steven L. Offner, General Counsel
    Millard Refrigerated Services
    4715 E. 132nd St.
    Omaha, NE 68137
    402-896-4734

3.  Michael A. Polerecki (non-Guatemala), Operations Manager (FFC)
    c/o Steven L. Offner
    (see above)

4.  Jake Symmonds (non-Guatemala), Supervisor (telephone interview)
    c/o Steven L. Offner
    (see above)

5.  Carlos Mamarian (non-Guatemala), Operations Manager (telephone interview)
    c/o Steven L. Offner
    (see above)

6.  Pedro Reynoso (non-black), (non-Guatemala), Supervisor (telephone interview)
    c/o Steven L. Offner
    (see above)

Charge No.: 2007CF1595
Page 12 of 12

## Staff note:

Complainant listed two witnesses on the CIS form, Francisco Lopez, and Ronald Buford. Complainant indicated that neither witness has any firsthand knowledge about Complainant's written warning, suspension, or constructive discharge. Due to the lack of relevant testimony, the Department did not interview the witnesses

## Exhibits

- A. Verified Response.
- B. Respondent's EEO-1 Report.
- C. Job Description for Forklift Driver.
- D. Employment file for Complainant.
- D-1. New Hire Information for Complainant dated July 16, 2003.
- D-2. Letter of resignation from Complainant dated March 3, 2005.
- D-3. New Hire Information for Complainant dated May 25, 2005..
- E. Written Warning for Complainant issued in October 3, 2006.
- F. Respondent's EEO policy.
- G. Respondent's attendance policy.
- H. Attendance Records for Complainant for 2005 and 2006.
- I. Documentation for four employees, besides Complainant, who received written warnings for an excessive amount of excused absences during the period January 1, 2006, and December 11, 2006.
- J. Employee Acknowledgement forms signed by Complainant on July 16, 2003, and May 25, 2005.
- K. Disciplinary Action Report for Complainant dated October 15, 2006.
- L. Disciplinary Action Report for Complainant dated April 25, 2006.
- M. Respondent's attendance policy.
- N. Documentation for five employees, besides Complainant, who received suspensions for an unexcused absences during the period January 1, 2006, and December 11, 2006.
- N-1. Suspension documentation for Eugene Cobb dated December 8, 2006.
- O. Respondent's accident policy.
- P. Documentation for five employees, besides Complainant, who resigned their positions during the period January 1, 2006, and December 11, 2006.
- Q. Documentation for 68 employees of Respondent who have taken a drug test because of an accident during the period of time October 1, 2004, through October 1, 2006.\
- R. Letter of resignation from Complainant dated October 26, 2006.

# EXHIBIT D

STATE OF ILLINOIS
DEPARTMENT OF HUMAN RIGHTS

IN THE MATTER OF:                                    )
                                                     )
MAXIMO F. WILHELM-MUNOZ,                             )       CHARGE NO.  2007CF1595
                                                     )       EEOC NO.   21BA70571
                         COMPLAINANT,                )
                                                     )
AND                                                  )
                                                     )
MILLARD REFRIGERATED SERVICES,                       )
                                                     )
                         RESPONDENT.                 )

> DEPT. OF HUMAN RIGHTS
> LEGAL DIVISION
> SEP 1 3 2007
> RECEIVED
> BY:  HD USPS FX MM/D

## REQUEST FOR REVIEW

Mr. Maximo F. Wilhelm-Munoz             Mr. Steven L. Offner, Esq.
459 Bristol Drive                       General Counsel
Carol Stream,  IL  60188                Millard Refrigerated Services, Inc.
                                        4715 South 132nd Street
                                        Omaha,  NE  68137

TO:    Mr. Maximo F. Wilhelm-Munoz
DATE:  August 17, 2007
REQUEST FOR REVIEW FILING DEADLINE DATE:   September 21, 2007

        I hereby request that the Department of Human Rights' (DHR) dismissal of the charge be reviewed by the Chief Legal Counsel of the Department.

        IN THE SPACE PROVIDED BELOW, YOU **MUST** LIST AND DESCRIBE THE SPECIFIC REASONS THAT THE CHARGE SHOULD NOT HAVE BEEN DISMISSED.  If applicable, you may write on the back of this form or attach additional information or documents, which support your Request for Review.  You may review your investigation file, to help you prepare your request by calling 312-814-6262 or 217-785-5100. The decision of the Chief Legal Counsel will be published on the Department's website.

_Please find attached Documents and Reasons_

_Max F. Wilhelm_                              _09/13/2007_
        SIGNATURE                                    DATE

YOU MUST ENCLOSE THE ORIGINAL AND THREE COPIES OF YOUR ENTIRE REQUEST AND SIGN, DATE AND HAVE THIS FORM POSTMARKED OR HAND DELIVERED BY THE FILING DEADLINE DATE ABOVE, TO:

Chief Legal Counsel, Illinois Department of Human Rights, 100 West Randolph Street, Suite 10-100, Chicago, IL  60601.

**THIS FORM MAY NOT BE SENT VIA TELEFAX.**
2/99

*I Request for Review Form*

Request For Review.                                      September 12, 2007

Att: Department Of Human Rights:

I request for a Review now due to Discrepancies stated.

1/- I have acknowledged on a NOTARIZED RESPONSE mailed to me as a Copy issued of the same delivered to IDHR in March of 2007, in concern of the Perfected claimes that I have filed in, Millard Refrigerated affirms that no one at all at Millard during both times that I worked for them, that Millard ever knew I was Originally from Guatemala, Central America, and that Millard Refrigerated Services Inc never have had any type of substancial evidence to support my claims.

1.A. in Fact, I was asked by Mr. Jeff Ramsey to not work on 06/12/2005 beginning to not work on 06/13/2005 due that I had my permit to work of Immigration exprired. After my shirt was over, I went to talk to Sam Pillay, and in fact, there was Mr. Sam Pillay and asked me to not work until I had my permit to work active and not expired. The same day, I requested information to my Legal Attorney of Law in concern of the same. Two days later, on 06/15/2005 I received my Attorney's mailing Letter stating that I am lawfully eligible to work in the United States due that I am a Political Assylee and that the CFR (Code of Federal Regulations) affirmed and still affirms that a Political asylee does not need a Permit to employment legally to work in the United States and this reform has not been changed from CIS.
    Mr. Sam Pillay asked me to be patient until I got a response from them and be eligible to work with them. I showed up next week, and I got accepted to work again beginning on Sunday 06/26/2005.

   *Mr. Sam Pillay asked me to be patient until I got a response from them and be eligible to work with them. I showed up next week, and I got accepted to work again beginning on Sunday 06/26/2005.*   **8 excused absences PLUS I signed a counseling document ON 06/26/2005 and I did not receive a copy.**

# 1ST. EXCUSED ABSENT + INCIDENT WAS ON 06/13/2005.

**I got here the attachment of my banking account where of I used to have my direct deposit when Millard used to deposit my payments. On 06/24/05 I got paid $67**

*(Color copies)*

90


Dollars and cents.  On 07/01/05 I did not get paid for 1 week not worked, which was the week earlier.

2.- Mr. Michael Poleracky had the opportunity and time to review my assistance record since or before October of 2006.  Then, how come I was never reviewed under or before November of 2005?  There was an incident right therer on 06/13/07.

3.- On October 5th. Of 2006 I was not to work because my work days schedule were Sunday, Monday, Tuesday, Wednesday and Friday... except for the last week worked due to change of department directed by Sam Pillay and Michael Poleracky.  My last week worked at Millard was on Monday 10/23/2006 through 10/ 26/2006 and I did not work Sunday because of the request of either changing me from the inside of the freezers to the outside of the Freezers, but what they did was change me of the department to other department but kept me in the freezer.

4.- Eugene Cobb has not received any type or form of disciplinary action until this days of September of 2007 since he broke his leg last year.  Eugene Cobb was absent as excused absence over 3 weeks of work and did never and has not received any type of corrective action for breaking his leg as I did.  EUGENE COBB IS A REFERAL.

5.- Mr. Pedro Reynoso was my direct supervisor not since May of 2005, because he was not supervisor by that time.  Mr. Jeff Ramsey was my direct supervisor in 2005, then after Jeff Ramsey, Ronald Bufford was my supervisor over spring of 2006 and part of the

Summer of 2006 until Mr. Ronald Bufford Resigned. Then Pedro Reynoso came to be my direct Supervisor in July of 2006. I confirm and re affirm that Mr. Pedro Reynoso stated My Grandfather was a Narcotrafican and that was the reason he probably would have left belongings to my family, Mr. Pedro Reynoso knows and did know I was from Guatemala.

I PRESENTED EMPLOYMENT DOCUMENTATION ON THE 1ST. AND 2ND TIME I WORKED FOR MILLARD REFRIGERATED SERVICES.

MR. MICHAEL POLERECKY DID NOT GIVE ME A COPY TO VALIDATE HIS DISCIPLINARY ACTIONS ON OR ABOUT 10/03/06 NEITHER ON 10/15/06... AND I CONFIRM IT. Legally has to be served three copies with carbon paper between... 1st. Copy is issued to PERSONAL FILE OF THE EMPLOYEE, 2nd. Copy is for Executive Office and the third copy is to the employee so that t he employee can review it on their own privacy... if the only 1 and unique signed copy which was printed is at Millard's power, where and when did I get my opportunity to see the disciplinary action I was Issued after then? PEOPLE DO NOT HAVE A PERFECTED MEMORY to remember alwys, mostly if they do not have a copy of an issue like that.

I petition to call the referrals I worte down at the form of the filling of the claims I have filled in... reason that Eugene Cobb who still works there has not received any type of disciplinary action so far, and neither did Francisco Fuerte Lopez. Neither Cesar Nava who still works there, please call Mr. Hugo Carillo, and the other persons that I wrote down and brought in to the Department of Human rights at the Fact Finding Conference on 06/27/2007..

**MR. MICHAEL POLERACKY WAS NOT THERE at Mr. Carlos Mamarian's office neither I saw Mr. Mike P. at Mr. Carlos Mamarian's Office on 10/26/2006.**

**That resignation note I want to see. The one that was given to Mr. Carlos Mamarian, hand written and dated on 10/26/2006 and signed by me. That I did not write down Drug Test at all. I stated I did quit (constructively discharged myself, of course), BECAUSE OF NOT RECEIVING THE OPORTUNITY TO TAKE MY VACATIONS AND FOR WARNING PLUS WRITTE UP AND FOR WRITTE UP AND SUSPENSION. THEN I SIGNED IT ON A YELLOW PAPER NOTEBOOK.**
**Nothing else to say except thank you.**

**MAXIMO F. WILHELM MUNOZ**

# EXHIBIT E

STATE OF ILLINOIS
DEPARTMENT OF HUMAN RIGHTS

IN THE MATTER OF THE:                          )
REQUEST FOR REVIEW BY:                         )
                                               )
Maximo F. Wilhelm-Munoz,                       )CHARGE NO.  2007CF1595
COMPLAINANT                                    )
                                               )
                                               )

### NOTICE OF TIMELY REQUEST FOR REVIEW

Maximo F. Wilhelm-Munoz                 Rocco J. Claps, Director
459 Bristol Drive                       Department of Human Rights
Carol Stream, IL  60188                 100 W. Randolph St., Ste. 10-100
                                        Chicago, Illinois 60601
Steven L. Offner,  Esq.
General Counsel
Millard Refrigerated Services, Inc.
4715 South 132nd Street
Omaha, NE  68137

**RESPONDENT'S REPLY RECEIPT DATE: October 17, 2007**

**COMPLAINANT'S SURREPLY RECEIPT DATE: November 5, 2007**

YOU ARE HEREBY NOTIFIED of the timely filing with the Chief Legal Counsel of the Department of Human Rights of a Request for Review of the Department's Notice of Dismissal of the charge indicated above.

Although it is not mandatory that Respondent submit a Reply, should Respondent choose to draft one, it must be received by the above date.  Please send an original and three copies to the Chief Legal Counsel.  You must also serve a copy on Complainant and provide a notarized statement that such copy was served. If a copy is not served on Complainant, the Chief Legal Counsel cannot consider Respondent's Reply.

If Respondent submits a Reply, Complainant may submit a Surreply (a response to Respondent's Reply).  Although it is not mandatory that Complainant submit a Surreply, should Complainant choose to draft one, it must be received by the above date.  Please send an original and three copies to the Chief Legal Counsel.  You must also serve a copy on Respondent and provide a notarized statement that such copy was served. If a copy is not served on Respondent, the Chief Legal Counsel cannot consider Complainant's Surreply.

Prior to submission, please redact any social security numbers which may appear on any document.

The Department cannot respond to telephone calls concerning this case.  All inquiries must be put in writing and received in advance of the above due date.

Dated:  September 27, 2007                  DEPARTMENT OF HUMAN RIGHTS

                                            BY: _____
                                                  Chief Legal Counsel

TIM.RR.DEF.SURREPLY

# EXHIBIT F

STATE OF ILLINOIS )
) ss
COUNTY OF COOK )

CHARGE NO.: 2007CF1595

## AFFIDAVIT OF SERVICE

RUTH WILLINGHAM, being first duly sworn on oath, states that she served a copy of the attached ORDER upon each person named below this _7th_ day of _January_, 2008, in the manner indicated below.

---

(X)    FIRST CLASS MAIL

Maximo F. Wilhelm-Munoz
459 Bristol Drive
Carol Stream, IL 60188

Steven L. Offner, Esq.
General Counsel
Millard Refrigerated Services
4715 S. 132nd St.
Omaha, NE 68137

(X)    BY HAND DELIVERY

Rocco J. Claps, Director
Department of Human Rights
100 West Randolph Street
Suite 10-100
Chicago, IL 60601

_Ruth Willingham_
RUTH WILLINGHAM

SUBSCRIBED AND SWORN TO BEFORE ME

THIS _7th_ DAY OF _January_ 2008

_Krystal Rogers_
NOTARY PUBLIC

OFFICIAL SEAL
KRYSTAL ROGERS
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:11/16/10

97

STATE OF ILLINOIS
DEPARTMENT OF HUMAN RIGHTS

IN THE MATTER OF THE          )
REQUEST FOR REVIEW BY:        )
                              )
MAXIMO F. WILHELM-MUNOZ       )        CHARGE NO:  2007CF1595
                              )        EEOC NO:  21BA70571
                              )

ORDER

This matter coming before the Chief Legal Counsel Designee upon Complainant's
Request for Review ("Request") of the dismissal by the Department of Human Rights
("Department") of Charge No. 2007CF1595, Maximo F. Wilhelm-Munoz, Complainant, and
Millard Refrigerated Services, Respondent; and the Chief Legal Counsel Designee having
reviewed de novo the Department's investigation file, including the Investigation Report,
Complainant's Request and supporting materials, and Respondent's Reply to Complainant's
Request ("Reply"); and the Chief Legal Counsel Designee being fully advised of the premises;

NOW, THEREFORE, it is hereby ORDERED that the Department's dismissal is
SUSTAINED on the following ground:

LACK OF SUBSTANTIAL EVIDENCE

In support of which determination the Chief Legal Counsel Designee states the following
findings of fact and reasons:

1.      Complainant filed a charge of discrimination with the Department on December 11,
2006, alleging that Respondent gave him a written warning (Count A), suspended him (Count
B), and constructively discharged him (Count C) because of his national origin, Guatemala, in
violation of Section 2-102(A) of the Illinois Human Rights Act.  On August 17, 2007, the
Department dismissed Complainant's charge for Lack of Substantial Evidence.  On September
13, 2007, Complainant filed this timely Request.

2.      As to Counts A, B, and C, Complainant, a Forklift Driver, alleges that on October 3,
2006, Respondent gave him a written warning for having five or more excused absences in a
year, on October 15, 2006, Respondent suspended him for having two or more days of being
tardy, and on October 26, 2006, Complainant was constructively discharged because he was
unable to use his vacation leave and was subjected to hazardous work conditions, because of his
national origin.  Complainant further alleges that Respondent treated him differently than
similarly situated non-Guatemala co-workers.

98

3.     As to Count A, Respondent's articulated, legitimate, non-discriminatory reason for giving Complainant a written warning was because Respondent's progressive disciplinary policy states that a written warning should be issued after four excused absences within a twelve-month period.  As to Count B, Complainant was given a one-day suspension because Respondent's attendance policy states that for two unexcused absences the employee will receive a final warning and a one-day suspension.  As to Count C, on October 22, 2006, Complainant had an accident with his forklift and refused to take a drug test.  Complainant's supervisor informed him that he would be suspended if he did not submit to a drug test, to which Complainant responded that he quit.

4.     As to Count A, the Department's investigation did not reveal that Respondent issued to Complainant a written warning because of his national origin.  The investigation revealed that Respondent has an Attendance Policy that states in part, that excessive excused absences will be disciplined as follows: three excused absences in a twelve month period – counseling; four excused absences in a twelve month period – written warning; five excused absences in a twelve month period – final warning and a one-day suspension; and seven excused absences in a twelve month period – termination.  The investigation revealed that Respondent is a cold storage facility that hired Complainant on July 16, 2003, as a Forklift Driver.  Complainant alleges that in 2003, he gave Respondent a work authorization stating his national origin was Guatemala.  Complainant resigned on March 3, 2005, and was rehired as a Forklift Driver on May 25, 2005.

5.     Furthermore as to Count A, Respondent's attendance records show that from November 21, 2005, through October 2, 2006, Complainant was absent on the following seven days: November 21, 2005, November 22, 2005, December 28, 2005, July 2, 2006, September 6, 2006, October 1, 2006, and October 2, 2006.  Complainant alleges that the reason for the absences were that he was not allowed to take vacation leave, he had car problems, or he worked as many as twenty-three hours in a day.  The investigation further revealed four co-workers who received written warnings for excused absences from January through December 2006.  Two of these employees had four excused absences and two had five excused absences.  The investigation revealed that Respondent did not treat Complainant different than similarly situated co-workers.  There is no substantial evidence of a nexus between Respondent issuing a written warning to Complainant and his national origin.  Therefore, there is no substantial evidence that Respondent issued a written warning to Complainant because of his national origin.

6.     As to Count B, the Department's investigation did not reveal that Respondent suspended Complainant because of his national origin.  The investigation revealed that Respondent has an Attendance Policy that states in part, that excessive unexcused absences will be disciplined as follows: one unexcused absence – written warning; two unexcused absences in a twelve month period – final warning and one-day suspension; three unexcused absences in a twelve month period – termination.  The policy further states that being tardy on four days equals one unexcused absence.  The investigation further revealed that in a Disciplinary Action Report dated April 25, 2006, Complainant was issued a written warning for an unexcused absence on April 12, 2006.  In a Disciplinary Action Report dated October 15, 2006, Complainant was suspended for unexcused absences on April 12, 2006, and October 5, 2006, and for being late five times in 2006.  The investigation further revealed that five co-workers who each had two unexcused absences, besides Complainant, were suspended for unexcused absences from January 1, 2006,

through December 11, 2006. The investigation revealed that Respondent did not treat Complainant different than similarly situated co-workers. There is no substantial evidence of a nexus between Respondent issuing a one-day suspension to Complainant and his national origin. Therefore, there is no substantial evidence that Respondent suspended Complainant for one day because of his national origin.

7.     As to Count C, the Department's investigation did not reveal that Respondent constructively discharged Complainant because of his national origin. The investigation revealed that Respondent's Accident Policy states that any employee involved in an accident involving property damage must report the accident to their immediate supervisor and that any employee involved in a reportable accident must submit to a drug test. On October 22, 2006, Complainant had an accident at work while operating his forklift in which an overhead light was broken. Complainant did not report the accident. Complainant's supervisor, Jake Symmonds, confronted Complainant about the accident, and Complainant admitted to having the accident. The next day, October 23, 2006, Carlos Mamarian, Operations Manager, told Complainant he would have to take a drug test. The investigation further revealed that sixty-eight employees from October 1, 2004, through October 1, 2006, have taken drug tests because of workplace accidents. Complainant refused to take the drug test, and was suspended pending an investigation. Respondent contends that when Complainant was informed of the suspension he quit. The investigation further revealed that Complainant's letter of resignation dated October 26, 2006, stated he was resigning because he was asked to take a drug test, received a written warning, and that he was suspended.

8.     Furthermore as to Count C, Constructive discharge will be found where respondent deliberately made working conditions so intolerable that a reasonable person in Complainant's position would have had no choice but to resign. Steele v. HRC, 160 Ill.App.3d 577, 513 N.E.2d 1177 (3rd Dist. 1987). Green Hills Country Club v. HRC, 162 Ill.App.3d 216, 514 N.E.2d 1227, 113 Ill.Dec. 216 (5th Dist. 1987). Here, Complainant refused to take a mandatory drug test and pursuant to Respondent's written policy, he was suspended. Thereafter, Complainant voluntarily resigned. The investigation revealed that Respondent did not treat Complainant different than similarly situated co-workers. There is no substantial evidence of a nexus between Respondent following its written accident policy and Complainant's national origin. Therefore, there is no substantial evidence that Respondent suspended constructively discharged Complainant because of his national origin.

9.     In his Request, Complainant alleges that he was treated differently than co-worker Eugene Cobb ("Cobb"). The investigation revealed that Cobb was suspended for one day in accordance with Respondent's Attendance Policy. As such, there is no substantial evidence that Respondent treated Complainan differently than similarly situated co-workers. Complainant's Request is not persuasive.

10.     In its Reply, Respondent contends that the Department properly dismissed Complainant's charge for Lack of Substantial Evidence.

11.    This is a final Order.  A final Order may be appealed to the Appellate Court by filing a petition for review, naming 1) the Chief Legal Counsel Designee, 2) the Department, and 3) Respondent as appellees, with the Clerk of the Appellate Court within 35 days after the date of service of this Order.  The Department deems "service" complete 5 days after mailing.

ENTERED THIS _____ 9th DAY OF _January_____ , 2008.

Michael I. Lieberman
Supervising Attorney
Chief Legal Counsel Designee

# EXHIBIT G

Gen No. 2-08-0104

IN THE
APPELLATE COURT OF ILLINOIS
SECOND DISTRICT

IN THE MATTER OF:                          )
                                           )
MAXIMO F. WILHELM-MUNOZ,                    )
                                           )
        Petitioner/Appellant,              )        Petition for Review of a Final Order
                                           )        of the Chief Counsel of the
        v.                                 )        Illinois Department of Human Rights
                                           )        Charge No. 2007CF1595
MICHAEL I. LIBERMAN, CHIEF                  )
LEGAL COUNSEL DESIGNEE,                     )
ROCCO J. CLAPS, DIRECTOR,                   )        Appellate Court
OF ILLINOIS DEPARTMENT OF                   )        General No. 2-08-0104
HUMAN RIGHTS, and MILLARD                   )
REFRIGERATED SERVICES,                      )
                                           )
        Respondents/Appellee.              )

NOTICE OF FILING

To: Lindsay E. Dansdill
    Fisher Kanaris, P.C.
    200 South Wacker Drive
    22nd Floor
    Chicago, Illinois 60606

YOUR ARE HEREBY NOTIFIED THAT we have this date filed in the office of the

Clerk of the Appellate Court, Second District, Illinois, the following:

JOINT STIPULATION TO DISMISS

Dated : April 16, 2008

Michael T. Smith
843 W. Wise Road
Schaumburg, IL 60193
(847) 895-0626

Lindsay E. Dansdill
Fisher Kanaris, P.C.
200 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606
(312) 474-1418

## PROOF OF SERVICE

The undersigned, on oath, states the he served this notice by first class mail from Roselle, Illinois Attorney Lindsay E. Dansdill, on April 17, 2008.

_____
Michael T. Smith

Michael T. Smith
Attorney No. 06180407
843 W. Wise Road
Schaumburg, IL 60193
(847) 895-0626

Gen No. 2-08-0104

IN THE
APPELLATE COURT OF ILLINOIS
SECOND DISTRICT

IN THE MATTER OF:                    )
                                     )
MAXIMO F. WILHELM-MUNOZ,             )
                                     )
        Petitioner/Appellant,        )
                                     )        Petition for Review of a Final Order
        v.                           )        of the Chief Counsel of the
                                     )        Illinois Department of Human Rights
MICHAEL I. LIBERMAN, CHIEF           )        Charge No. 2007CF1595
LEGAL COUNSEL DESIGNEE,              )
ROCCO J. CLAPS, DIRECTOR,            )        Appellate Court
OF ILLINOIS DEPARTMENT OF            )        General No. 2-08-0104
HUMAN RIGHTS, and MILLARD            )
REFRIGERATED SERVICES,               )
                                     )
        Respondents/Appellee.        )

AFFIDAVIT

Michael T. Smith being first duly sworn upon oath depose and state:

1.  I represent Maximo F. Wilhelm-Munoz in the above captioned matter, Appellate
Number 2-08-0104. I am the attorney preparing this stipulation.

2.  At this time, based upon consultation with Maximo F. Wilhelm-Munoz and
attorney Lindsay E. Dansdill for the Appellee, the Joint Stipulation to Dismiss has been
entered into voluntarily by each party to terminate this appeal process.

        Affiant further sayeth not.

                        _____
                              Michael T. Smith

Subscribed and Sworn to
before me this 17th day of
April 17, 2008.


_____
Notary Public

# EXHIBIT H

EEOC Form 161 (3/98)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | **Mr. Maximo F. Wilhelm-Munoz**<br>**459 Bristol Drive**<br>**Carol Stream, IL 60188** | From: | **Equal Employment Opportunity Commission**<br>**Chicago District Office**<br>**500 West Madison Street**<br>**Suite 2800**<br>**Chicago, Illinois 60661-2511** |
|---|---|---|---|

[ ]  *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR § 1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 21B-2007-00571 | Nola Smith, State & Local Coordinator | (312) 886-5973 |

THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans with Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge.

[ ] Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

[ ] While reasonable efforts were made to locate you, we were not able to do so.

[ ] You were given 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.

[ ] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[X] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other *(briefly state)*

## - NOTICE OF SUIT RIGHTS -

*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this Notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may **not be collectible.**

On behalf of the Commission

*John P. Rowe*

**John P. Rowe, District Director**

APR 07 2008

*(Date Mailed)*

Enclosure(s)

cc:  **MILLARD REFRIGERATED SERVICES**

*Exhibit "B"*